UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM FOSBRINK, on behalf of himself
and on behalf of all others similarly situated,

                      Plaintiffs,

v.                                          Case No. : 8:17-cv-1154-JSM-CPT

AREA WIDE PROTECTIVE, INC.

                      Defendant.
_____/

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

     Plaintiff, William Fosbrink ("Plaintiff"), and Area Wide Protective, Inc. ("Defendant") hereby files this Motion for Final Approval of Class Action Settlement and Incorporated Memorandum of Law, seeking the Court's final approval of the parties' class action settlement ("Settlement Agreement" - previously filed with the Court as an attachment to ECF 70 and filed herewith as Exhibit "1.")

     The Court has already preliminary approved the parties' Settlement Agreement. (ECF 71).  After preliminary approval was granted, notice was mailed to class members in accordance with the Court's preliminary approval Order. (*Id*.).  The reaction has been overwhelmingly positive.  No class member objected.  No class member asked to be excluded from the Settlement.  Practically speaking, little has changed since the Court issued the Order granting Preliminary Approval, confirming the Settlement is fair, reasonable, adequate, and warrants final approval.

## I.  HISTORY OF THE LITIGATION

In February 2016, Plaintiff applied for employment with Defendant. Plaintiff alleges Defendant did not lawfully disclose to him that it intended to procure his consumer report for employment purposes. Specifically, Defendant failed to provide him with a "stand-alone" disclosure form pursuant to 15 U.S.C. § 1681b(b)(2)(A), causing him informational injury by depriving him of information to which he was legally entitled. Concomitantly, Plaintiff alleges since Defendant did not provide him with a lawful disclosure, Defendant had no permissible purpose for obtaining his consumer report, thereby violating his right to privacy. Based on the foregoing alleged violation, Plaintiff asserted FCRA claims against Defendant on behalf of himself and a "Background Check Class" consisting of other consumers to whom Defendant provided a substantially similar disclosure form and upon whom Defendant obtained a consumer report for employment purposes.

This action was originally filed on May 16, 2017 and has been aggressively litigated on both sides (ECF 1). Specifically, Defendant filed two motions to dismiss. (ECF 15, 20). Subsequently, after the motions to dismiss were denied, Plaintiff served comprehensive discovery on Defendant and third parties. Plaintiff moved for Rule 23 certification, which Defendant opposed. (ECF 33, 41). Following a substitution of counsel, Defendant filed a second brief opposing challenging Plaintiff's Article III standing, to which Plaintiff responded. (ECF 52, 57). The Court ruled in Plaintiff's favor, granting certification. (ECF 58). On May 29, 2018, the parties attended a mediation with Mr. Rodney Max but were unable to reach a settlement agreement. Defendant petitioned the Eleventh Circuit to review the district court's certification order. Plaintiff opposed Defendant's petition. The Eleventh Circuit granted Defendant's petition for review. (ECF 63). Subsequently, the Court stayed this action pending the Eleventh Circuit's resolution of Defendant's

Rule 23(f) appeal. (ECF 66). During the appeals period, with Mr. Max's assistance, the parties reached a settlement. (ECF 67).

On October 4, 2018, the Parties moved the Court for preliminary approval of the Settlement Agreement. (ECF 70). One day later, the Court preliminarily approved the Settlement and Notice to Settlement Class. The Settlement Class was defined as:

> **All AWP, Inc. employees and job applicants in the United States who were the subject of a consumer report that was procured by AWP, Inc. within two years of the filing of this complaint through the date of final judgment in this action as required by 15 U.S.C. § 1681b(b)(2)(A) and as to whom AWP, Inc. used the purported disclosure and authorization form, or substantially similar forms, attached hereto as Exhibit A.**

(ECF 71).

## II. OVERVIEW OF SETTLEMENT TERMS AND RELIEF

**A.  The Settlement Classes And Benefits**

The Settlement resolves the claims of a nationwide Background Check class consisting of consumers upon whom it is alleged Defendant unlawfully obtained a background check for employment purposes in violation of the Fair Credit Reporting Act ("FCRA"). Class members submitting claims forms will receive cash payments without having to show that Defendant willfully violated the FCRA.

If final approval is granted, the Settlement requires Defendant to create a Settlement Fund of $850,000. (Settlement Agmt., ¶ 37). This represents a gross recovery of approximately $64 to each class member.[1] All costs, expenses, fees, relief, and/or any payments of any kind in connection with or associated with this Settlement shall be paid from the Settlement Fund,

---

[1] Defendant had previously represented the class consisted of approximately 22,000 members, which would have resulted in an estimated $39 gross recovery per class member (Settlement Agreement, ¶ 34). However, the class actually consists of 13,254 members. Thus, the per capita gross recovery is significantly higher.

including: (a) all payments to Settlement Class Members; (b) Class Representative Service Payment; (c) all costs of notice and settlement administration; and (d) all Attorneys' Fees and Costs, as approved by the Court (*Id.* ¶ 42).

Each Settlement Class Member who submitted a claim will receive a payment in the amount of approximately $40 from the Net Settlement Fund, which is the amount remaining after attorneys' fees and costs, costs of notice to the Settlement Class and settlement administration, and Plaintiff's service award.  Settlement Class Members shall have 90 days from the date on which checks are mailed to negotiate their checks. (*Id.* ¶ 42).  Any unclaimed funds will revert to Defendant.

The monetary relief obtained by this proposed settlement demonstrates that this settlement is a very good result for the Class.

**B.    Notice And Administration**

The Parties utilized a private, Court-approved third-party vendor, JND Legal Administration, to notify the Settlement Class of the settlement and to provide settlement administration services.  The Parties agreed that the expense of providing notice to the Settlement Class and administering the settlement would be paid from the Settlement Fund (Settlement Agmt., ¶¶ 37, 42).

On October 16 2018, Defendant provided the Settlement Administrator an electronic file containing the names and last known mailing addresses for 13,254 class members (Ex. 2, JND Decl., ¶ 4). On October 23, the Settlement Administrator established a toll free number and website, AWPFCRAclassaction.com to make information about the settlement available to class members. (*Id.*, ¶ 5, 6). That same day, the Settlement Administrator mailed the Court approved Class Notice and Claim Form by first class-regular U.S. Mail to 13,254 class members. (*Id.*, ¶ 7;

Ex. A – Class Notice). Through December 24, 2018, 3,417 Notices were returned as undeliverable without a forwarding address. (*Id.*, ¶ 8). After conducting advance address research, JND was ultimately able obtain address information for 1,777 class members and re-mailed notice. Of the re-mailed notices, 388 were deemed undeliverable. (*Id.*, ¶8).

The Notices informed Settlement Class members of: (1) the material terms of the Settlement Agreement; (2) their right to object and how to do so; (3) their right to exclude themselves by opting out and how to do so; (4) that they will be bound by the Settlement Agreement if they do not opt out; (5) the date, time and location of the final fairness hearing scheduled by the Court; and (6) that the Court retains the right to reschedule the final fairness hearing without further notice. (*Id.*, Ex. A). The Class Notices also directed recipients to the settlement website, www.AWPFCRAclassaction.com, which contained additional information about the Settlement and provided the toll free number (*Id.*). These extensive efforts to provide notice to the Settlement Class are "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

Initial payments to Settlement Class Members will be mailed by the Settlement Administrator by check and delivered by first-class U.S. mail, postmarked within 10 business days of the Effective Date. All initial checks will expire ninety (90) days after they are issued and will state the expiration date on their faces.

C.   **Class Members Overwhelmingly Support the Settlement**

The Settlement was supported by the Settlement Class. The deadline for exclusions and objections was November 23, 2018. There were **zero** objections (Ex. 2, ¶ 12), and **zero** requests

for exclusion. (*Id.,* ¶ 13).  In fact, 2,262 Class Members submitted Claims forms.[2] (*Id.,* ¶ 9). This high claims rate combined with the complete absence of any objections or requests for exclusion, reflect the positive reaction to the Settlement.

**D.     The Release of Claims**

In return for the substantial benefits Class Members will receive, they will release all claims alleged in the Action (including Plaintiff's Complaint) and any known or unknown claims that were or could have been alleged based on the specific facts and/or legal theories alleged in the Plaintiff's Complaint and/or related to the current Action, including ones under the Fair Credit Reporting Act (including but not limited to 15 U.S.C.§ 1681b(b)(2)(A) and 15 U.S.C.§ 1681b(b)(3)(A)) and any FCRA State/Local equivalents, including but not limited to background check or consumer report disclosure notices and forms, the procurement and use of any background check or consumer reports (including but not limited to any claims under California Business & Professions Code section 17200), whether such factual basis is known or unknown at the time the release is approved by the Court.  The period of the Released Claims extends to the limits of the Covered Period. (Ex. 1, Settlement Agreement, ¶¶ 28).

**E.     Attorneys' Fees and Expenses**

Pursuant to the Settlement Agreement, Class Counsel is authorized to petition the Court for up to thirty percent Settlement Fund as attorneys' fees and costs. (Settlement Agreement, ¶ 45).  Class Counsel has filed a separate motion seeking approval for fees and costs, including costs of providing notice to the Settlement Class and for Settlement Administration services

---

[2] Approximately 20% of class members to whom notice was mailed timely submitted claims.

(ECF 75). Defendant agrees not to oppose the amount of fees and costs sought by Class Counsel, up to thirty percent of Settlement Fund. (Settlement Agreement, ¶ 45).

### III. THE PROPOSED CLASS HAS BEEN CERTIFIED AND THE NOTICE PLAN APPROVED

**A. The Class Has Already Been Certified**

The Court has already determined this action was proper for resolution on a class wide basis pursuant to Rule 23(a) and 23(b)(3). (*See* ECF 28.) Since the Court's Preliminary Approval Order, no objections addressing class certification were received. Thus, there is no reason to re-visit the Court's prior ruling.

**B. The Class Notice Met the Requirements of Rule 23(c) And Due Process**

Federal Rule of Civil Procedure 23(c)(2)(B) requires that class notice:

> [C]oncisely state in plain, easily understood language:
>
> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The Court-approved Notice satisfies each of these requirements. (Ex. A to JND Decl.)

As to the manner of providing notice, Federal Rule of Civil Procedure 23(c)(2)(B) provides, in pertinent part, that, "[f]or any class certified under Rule 23(b)(3) the Court must direct to class members the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." An individual mailing to each class member's last known address has been held to satisfy the "best notice practicable"

test. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (noting that individual mailings satisfy Rule 23(c)(2)). Here, the Settlement Administrator exceeded these requirements. (Ex. 2, ¶ 7, 8).

C. **The Settlement is Fair, Reasonable, and Adequate**

In determining whether a proposed settlement is fair, reasonable, and adequate, the Court should consider several factors, including: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Waters*, 2012 U.S. Dist. LEXIS 99129, at *33 (citing *In re CP Ships Ltd. Secs. Litig.*, 578 F.3d 1306, 1317–18 (11th Cir. 2009)). "[D]etermining the fairness of a [class action] settlement is a discretionary decision for the trial court, though it should be 'informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement.'" *United States ex rel. Balko v. Senior Home Care, Inc.*, No. 8:13-CV-3072-T-17TBM, 2017 WL 9398654, at *8 (M.D. Fla. May 2, 2017), *report and recommendation adopted*, No. 813CV03072EAKTBM, 2017 WL 3268200 (M.D. Fla. Aug. 1, 2017). Here, the Court has already preliminarily found these standards to be satisfied.

1. **The Likelihood of Success at Trial Confirms Settlement is Appropriate**

Continuing the FCRA Litigation would have been complicated, protracted, and expensive. The Eleventh Circuit had granted Defendant's Rule 23(f) petition appealing this Court's class certification order. Subsequently, the Court stayed the action pending resolution of Defendant's appeal. Thus, at best, the litigation was going to be protracted.

If Defendant were to have succeeded at the Eleventh Circuit, the prospects of imminent class wide relief were very low. Even if Plaintiff prevailed at the Eleventh Circuit, the risk of

8

being unable to establish liability and damages at trial was also present because of the numerous defenses Defendant intended to assert if the case was not settled. From Plaintiff's perspective, there was a risk of decertification of the class, or that further along in the litigation the Court would accept one or more of Defendant's arguments on a key point and grant summary judgment. Plaintiff's success on any of these aspects in motions practice, let alone at trial, was not guaranteed. Moreover, Plaintiff still faced the uphill battle of proving willfulness at trial even if he survived dispositive motions. There is no certainty that continued litigation would provide a better outcome than the settlement. This factor therefore favors a finding that the Settlement is fair, reasonable, and adequate. *Youngman v. A&B Ins. & Fin., Inc.*, No. 616CV1478ORL41GJK, 2018 WL 1832992, at \*7 (M.D. Fla. Mar. 22, 2018), *report and recommendation adopted*, No. 616CV1478ORL41GJK, 2018 WL 1806588 (M.D. Fla. Apr. 17, 2018) (approving settlement where plaintiffs faced similar difficulties of proof at trial).

Courts reviewing the issue of fairness have favored settlements that allow even partial recovery for class members where the results of suits are uncertain. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("Risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty."); *see In re Mexico Money Transfer Litig.*, 267 F.3d 743 (7th Cir. 2001); *Pinsker v. Borders Group, Inc. (In re BGI, Inc.)*, 465 B.R. 365, 379 (Bankr. S.D.N.Y. 2012) (approving class settlement with 17% cap on total liability, on grounds that "Class Members would have received nothing if they were not successful). Therefore, it is reasonable for the Class Members to take the bird in the hand instead of the prospective flock in the bush") (citations omitted); *Kizer*, 2012 U.S. Dist. LEXIS 63795, at \*23–24 (approving class settlement awarding approximately 30% of possible

recovery); *Smith*, 2007 U.S. Dist. LEXIS 85551, at *15 (approving class settlement where, "Plaintiffs concede that their case against the [] Defendants is not a sure success").

    **2.    The Recovery in the Settlement is in Line with Similar Class Action Settlements**

The Settlement, which represents a gross recovery of approximately $64 per Class Member, exceeds settlement amounts in similar cases under the FCRA. *See, e.g. Speer v. Whole Food Mkt. Grp., Inc.,* No. 8:14-CV-3035-T-26TBM, Document 68,(M.D. Fla. January 1, 2016)(final Order entered by Judge Lazzara approving $40 gross recovery for FCRA class members); *Simons v. Aegis Commc'ns Grp.,* No. 2:14-cv-04012, Document 29, (W.D. Mo. Oct. 15, 2014)(preliminarily approving improper disclosure settlement with payment of $35 per class member); *Beverly v. Wal-Mart Stores, Inc*., No. 3:07-cv-469, Document 39, (E.D. Va. May 1, 2009) (approving settlement providing for $54 gross amount per class member).

If the case were to be litigated through trial, and Plaintiff prevailed on the merits, the statutory damages for each Settlement Class Member would be fixed between $100-$1,000. However, if Defendant successfully appealed class certification or summary judgment, the Settlement Class members could receive nothing. Here, if the Court approves the Settlement, Settlement Class members will quickly monetize their FCRA claims. Thus, Class Members submitting claims stand to receive payments without any further risk, expense, or even the need to prove their claims and willfulness. Unquestionably, continuing to litigate would not guarantee a better outcome.

    **3.    Continued Litigation will be Complex, Expensive and Resource-Consuming**

There is an inherent and substantial expense to continued litigation. As detailed above, the action was aggressively litigated from the onset. In fact, settlement was obtained during a Court-imposed stay of the proceedings pending the Eleventh Circuit's resolution of Defendant's

Rule 23(f) petition. Put simply, there was no end in sight. In the absence of settlement, the parties would have continued expending time, money and judicial resources litigating the case.

### 4. There is No Opposition to Any Aspect of the Settlement

As noted above, nearly all Class Members were notified of the Settlement. None objected. None asked to be excluded. Class Counsel is not surprised at a lack of objections - the Settlement is a very good result for the Class. The complete absence of opposition to the Settlement favors a finding that it is fair, reasonable, and adequate. *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-CV-2424-T-23JSS, 2017 WL 2472499, at *1 (M.D. Fla. June 5, 2017) ("The absence of opposition to the settlement militates heavily toward approval.").

### 5. The Settlement was Reached at an Appropriate Stage of Proceedings

This factor focuses on assuring that "the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation." *United States ex rel. Balko*, 2017 WL 9398654, at *12. In this case, Plaintiff certainly did. The parties engaged in extensive discovery exchanging thousands of pages of documents. Class counsel is satisfied the case has been thoroughly investigated and settled at an appropriate state of the proceedings. Thus, the Court should conclude that this factor also favors granting final approval. See *Poertner v. Gillette Co.*, No. 6:12-CV-803-ORL-31DA, 2014 WL 4162771, at *4 (M.D. Fla. Aug. 21, 2014), aff'd, 618 F. App'x 624 (11th Cir. 2015) (finding similar facts weighed in favor of approval of settlement).

## IV. CONCLUSION

The Agreement is in the best interest of the Settlement Class, was reached through arm's-length negotiations through a well-respected mediator, and is fair and reasonable to all concerned.

WHEREFORE, Plaintiff respectfully requests the Court enter a Final Order: (1) approving the Settlement Agreement between Named Plaintiff, on his own behalf and on behalf of the Settlement Class, and Defendant; and (2) requiring the Parties to comply with the terms and conditions in the Settlement Agreement or pursuant to the Court's Order granting Final Approval.

## LOCAL RULE 3.01(g)

Defendant opposes this motion because Defendant does not agree the per capita gross and net recoveries are accurately stated.

/s/ *Marc R. Edelman*
Marc Reed Edelman, Esquire
Florida Bar No.: 0096342
MORGAN & MORGAN, P.A.
201 N. Franklin Street, #700
Tampa, FL 33602-5157
Telephone: 813-223-5505
Facsimile:  813-257-0572
medelman@forthepeople.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY that on this 11th day of January, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to:

Robin Taylor Symons, Esquire
GORDON & REES SCULLY MANSUKHANI
100 SE Second Street, Suite 3900
Miami, Florida 33131
rsymons@grsm.com
*Attorney for Defendant*

/s/ *Marc R. Edelman*
MARC R. EDELMAN, ESQ.