UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CASE NO. 8:17-CV-01154-JSM-CPT**

WILLIAM FOSBRINK, on behalf of himself
and on behalf of all others similarly situated,

    Plaintiffs,
vs.

AREA WIDE PROTECTIVE, INC.,

    Defendant.
_____/

**DEFENDANT AREA WIDE PROTECTIVE, INC.'S MOTION FOR FINAL APPROVAL OF SETTLEMENT IN ACCORDANCE WITH THE PARTIES' JOINT MOTION FOR PRELIMINARY APPROVAL AND THIS COURT'S ORDER GRANTING THE PARTIES' JOINT MOTION FOR PRELIMINARY APPROVAL**

Defendant, AREA WIDE PROTECTIVE ("Defendant"), hereby files this Motion for Final Approval of Class Action Settlement and Incorporated Memorandum of Law[1] seeking the Court's final approval of the Parties' class action settlement in accordance with the Parties' Joint Motion for Preliminary Approval (ECF 70) (a copy of the Parties' Joint Motion for Preliminary Approval is attached hereto as Exhibit 1), the Parties' Settlement Agreement (ECF 70-1) (a copy of the Parties' Settlement Agreement is attached hereto as Exhibit 2), and this Court's Order Granting the Parties' Joint Motion for Preliminary Approval (ECF 71).

Defendant agrees with Plaintiff's statement in his Motion for Final Approval that since this Court's Order Preliminarily Approving the Parties' Settlement, notice was mailed to class members and no class member objected or asked to be excluded from the Settlement. (ECF 76, p.

---

[1] Defendant hereby files its own Motion for Final Approval given Plaintiff's decision to renege on the settlement terms agreed to at mediation and memorialized in the Parties' Joint Motion for Preliminary Approval and Settlement Agreement (ECF 70, 70-1) – which this Court preliminarily approved on October 10, 2018 in its entirety (ECF 71).

1). However, Defendant disputes Plaintiff's statement that "[p]ractically speaking, little has changed since the Court issued the Order granting Preliminary Approval, confirming the Settlement is fair, reasonable, adequate, and warrants final approval." (ECF 76, p. 1). Specifically, Plaintiff is no longer seeking this Court's final approval of the Parties' Settlement Agreement (ECF 70-1), which sets forth the settlement terms the Parties discussed thoroughly and agreed to at mediation and subsequently memorialized in the Parties' Joint Motion for Preliminary Approval and the Parties' Settlement Agreement (ECF 70, 70-1). Instead, Plaintiff seeks this Court's final approval of new and unsupported settlement terms regarding the settlement amount recoverable by each Class Member.

Accordingly, Defendant hereby seeks this Court's Final Approval of the Parties' Settlement in accordance with the Parties' Joint Motion for Preliminary Approval (ECF 70), the Parties' Settlement Agreement (ECF 70-1), and this Court's Order Preliminarily Approving the Parties' Joint Motion for Preliminary Approval of Settlement (ECF 71), as follows:

### I.      HISTORY OF THE LITIGATION

In February 2016, Plaintiff applied for employment with Defendant. Plaintiff alleges that Defendant did not lawfully disclose to him that it intended to procure his consumer report for employment purposes. Specifically, Plaintiff alleges that Defendant failed to provide him with a "stand-alone" disclosure form pursuant to 15 U.S.C. § 1681b(b)(2)(A), causing him informational injury by depriving him of information to which he was legally entitled. Concomitantly, Plaintiff alleges that since Defendant did not provide him with a lawful disclosure, Defendant had no permissible purpose for obtaining his consumer report, thereby violating his right to privacy. Based on the foregoing alleged violation, Plaintiff asserted FCRA claims against Defendant on behalf of himself and a "Background Check Class" consisting of other consumers to whom

Defendant provided a substantially similar disclosure form and upon whom Defendant obtained a consumer report for employment purposes.

This action was originally filed on May 16, 2017 and has been aggressively litigated on both sides (ECF 1).  Specifically, Defendant filed two motions to dismiss. (ECF 15, 20).  Subsequently, after the motions to dismiss were denied, Plaintiff served comprehensive discovery on Defendant and third parties.  Plaintiff moved for Rule 23 certification, which Defendant opposed. (ECF 33, 41).  Following a substitution of counsel, Defendant filed a second brief challenging Plaintiff's Article III standing, to which Plaintiff responded. (ECF 52, 57).  The Court ruled in Plaintiff's favor, granting certification as to the "Background Check Class." (ECF 58).  On May 29, 2018, the Parties attended a mediation with Mr. Rodney Max but were unable to reach a settlement agreement.  Defendant petitioned the Eleventh Circuit to review the district court's certification order.  Plaintiff opposed Defendant's petition.  The Eleventh Circuit granted Defendant's petition for review. (ECF 63).  Subsequently, the Court stayed this action pending the Eleventh Circuit's resolution of Defendant's Rule 23(f) appeal. (ECF 66).  During the appeals period, with Mr. Max's assistance, the Parties reached a settlement and memorialized the terms of the settlement discussed and agreed-to at mediation in the Parties' Joint Motion for Preliminary Approval and the Parties' Settlement Agreement filed with this Court. (ECF 67, 70, 70-1).

On October 4, 2018, the Parties moved the Court for preliminary approval of the Settlement Agreement. (ECF 70 and 70-1).  One day later, the Court preliminarily approved the Settlement and Notice to Settlement Class.  The Class was defined as:

> All AWP, Inc. employees and job applicants in the United States who were the subject of a consumer report that was procured by AWP, Inc. within two years of the filing of this complaint through the date of final judgment in this action as required by 15 U.S.C. § 1681b(b)(2)(A) and as to whom AWP, Inc. used the purported disclosure and authorization form, or substantially similar forms, attached hereto as Exhibit A.

(ECF 70-1, 71).

## II.   OVERVIEW OF SETTLEMENT TERMS AND RELIEF

### A.   The Settlement Class and Benefits

The Settlement resolves the claims of a nationwide Background Check Class consisting of consumers upon whom it is alleged that Defendant unlawfully obtained a background check for employment purposes in violation of the Fair Credit Reporting Act ("FCRA"). Class members submitting claims forms will receive cash payments without having to show that Defendant willfully violated the FCRA.

As set forth in the Parties' Joint Motion for Preliminary Approval and the Parties' Settlement Agreement, the Class (agreed-to by the Parties and as defined by the Court) totaled approximately 22,000 Class Members[2]. (Joint Motion, p. 2, 8, ¶ 3; Settlement Agreement, p. 7, ¶ 34; p. 8, ¶ 37; Notice of Pendency of Class Action, p. 2, ¶ 3). In addition, the Parties agreed to a gross recovery amount of approximately $39 for each Class Member representing the gross *pro rata* share per class member of the $850,000 gross settlement fund agreed-to by the Parties to settle the class action. (Joint Motion, pp. 2-3, 10-11; Settlement Agreement, p. 8, ¶ 37; Notice of Pendency of Class Action, p. 3). The Parties agreed to the amount of the gross settlement fund of $850,000 specifically by multiplying the approximate number of total class members of 22, 0000 by the agreed-to gross *pro rata* share per Class Member of $39 ($39 x 22,000 = $850,000). (Joint Motion, pp. 2-3; Settlement Agreement, p. 8, ¶ 37; Notice of Pendency of Class Action, pp. 2-3).

Notably, Plaintiff and his Class Counsel unambiguously represented to this Court that they not only agreed to these terms but that they believed that these terms constituted a very good

---

[2]Nowhere in the Joint Motion for Preliminary Approval of Settlement or in the Settlement Agreement or any settlement-related document is the class defined as the "actual" number of class members ultimately identified by Defendant.

settlement to the Class:

> **5. The Settlement Agreement Is Fair in Light of the Possible Range of Recovery and Certainty of Damages.**
>
> . . .
>
> **The settlement proposed in the Agreement secures a monetary payment to each member of the Class in the approximate gross amount of $39.00 (before attorney's fees and costs, class settlement administration costs, and an incentive award for Plaintiff).** Even if the settlement class established liability against Defendant for willful violations of the pertinent provisions of the FCRA, a real risk exists that the class members could recover less after successfully litigating their claims through trial than the payment negotiated by the parties in the Agreement.
>
> **Settlement Class Counsel believes that the proposed minimum gross payment of approximately $39.00 to each member of the Class is a very good settlement, providing more relief to class members than other recently approved settlements.** The district court in *Hinson v. Kelly Services Inc.,* summarized the results of such settlements as follows:
>
> . . .
>
> The settlement proposed in the Agreement falls within the reasonable range of possible recovery for members of the settlement classes. "A proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Klein v. O'Neal, Inc.,* 705 F. Supp. 2d 632, 649 (ND. Tex. 2010). Balancing the risk that liability cannot be established against Defendants for willful violations of the disclosure and authorization provisions of the FCRA against the range of possible recovery of damages supports settlement.

(Joint Motion, pp. 10-11, 12-13) (Emphasis added).

Accordingly, based on the terms of the Parties' Settlement Agreement, preliminarily approved by this Court (ECF 70-1, 71), each Class Member who submitted a claim would receive a gross *pro rata* share in the amount of $39 from the gross settlement fund of $850,000 – which translates into a net *pro rata* share of $25 from the net settlement fund of $540,000 ($850,000 gross settlement fund minus Class Counsel's attorneys' fees and costs in the amount of $255,000), costs of notice to the Settlement Class and settlement administration in the amount of $52,000, and Plaintiff's service award in the amount of $2,500). The Class Members then have 90 days from the date on which checks are mailed to negotiate their checks. (Settlement Agreement, ¶ 42

(ECF 70-1)). Any unclaimed funds will revert to Defendant. As set forth above, and agreed to by Plaintiff and his Class Counsel, the monetary relief obtained by the Parties' proposed settlement demonstrates that this settlement is a very good result for the class, agreed to by the Parties and as defined by this Court. (ECF 70, 70-1).

**B.      Notice and Administration**

The Parties utilized a private, Court-approved third-party vendor, JND Legal Administration, to notify the Class Members of the settlement and to provide settlement administration services. The Parties agreed that the expense of providing notice to the Class and administering the settlement would be paid from the Settlement Fund (Settlement Agreement, ¶¶ 37, 42 (ECF 70-1)).

On October 16, 2018, Defendant provided the Settlement Administrator an electronic file containing the names and last known mailing addresses for 13,254 class members. On October 23, 2018, the Settlement Administrator established a toll free number and website, AWPFCRAclassaction.com to make information about the settlement available to class members. That same day, the Settlement Administrator mailed the Court approved Class Notice and Claim Form by first class-regular U.S. Mail to 13,254 class members. Through December 24, 2018, 3,417 Notices were returned as undeliverable without a forwarding address. After conducting advance address research, the Settlement Administrator was ultimately able obtain address information for 1,777 class members and re-mailed notice. Of the re-mailed notices, 388 were deemed undeliverable.

The Notices informed the Class Members of: (1) the material terms of the Settlement Agreement; (2) their right to object and how to do so; (3) their right to exclude themselves by opting out and how to do so; (4) that they will be bound by the Settlement Agreement if they do

not opt out; (5) the date, time and location of the final fairness hearing scheduled by the Court; and (6) that the Court retains the right to reschedule the final fairness hearing without further notice. The Class Notices also directed recipients to the settlement website, www.AWPFCRAclassaction.com, which contained additional information about the Settlement and provided the toll free number **(including a copy of the Parties' Joint Motion for Preliminary Approval and the Parties' Settlement Agreement).** These extensive efforts to provide notice to the Class are "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

Initial payments to Class Members will be mailed by the Settlement Administrator by check and delivered by first-class U.S. mail, postmarked within 10 business days of the Effective Date. All initial checks will expire ninety (90) days after they are issued and will state the expiration date on their faces.

**C.    Class Members Overwhelmingly Support the Settlement**

The Settlement was supported by the Settlement Class. The deadline for exclusions and objections was November 23, 2018. There were zero objections and zero requests for exclusion. In fact, 2,262 class members submitted claims forms.[3] This high claims rate combined with the complete absence of any objections or requests for exclusion, reflect the positive reaction to the Settlement.

**D.    The Release of Claims**

In return for the substantial benefits Class Members will receive, they will release all claims alleged in the Action (including Plaintiff's Complaint) and any known or unknown claims that were or could have been alleged based on the specific facts and/or legal theories alleged in the

---

[3] Approximately 20% of class members to whom notice was mailed timely submitted claims.

Plaintiff's Complaint and/or related to the current Action, including ones under the Fair Credit Reporting Act (including but not limited to 15 U.S.C.§ 1681b(b)(2)(A) and 15 U.S.C.§ 1681b(b)(3)(A)) and any FCRA State/Local equivalents, including but not limited to background check or consumer report disclosure notices and forms, the procurement and use of any background check or consumer reports (including but not limited to any claims under California Business & Professions Code section 17200), whether such factual basis is known or unknown at the time the release is approved by the Court.  The period of the Released Claims extends to the limits of the Covered Period. (Ex. 1, Settlement Agreement, ¶¶ 28).

### E.   Attorneys' Fees and Expenses

Pursuant to the Settlement Agreement, preliminarily approved by this Court, Class Counsel is authorized to petition the Court for up to thirty percent Settlement Fund as attorneys' fees and costs. (Settlement Agreement, ¶ 45 (ECF 70-1)[4].

### III.   THE PROPOSED CLASS HAS BEEN CERTIFIED AND THE NOTICE PLAN APPROVED

### A.   The Class Has Already Been Certified

The Court has already determined this action was proper for resolution on a class wide basis pursuant to Rule 23(a) and 23(b)(3). (*See* ECF 28.)  Since the Court's Preliminary Approval Order, no objections addressing class certification were received.  Thus, there is no reason to revisit the Court's prior ruling.

### B.   The Class Notice Met the Requirements of Rule 23(c) And Due Process

Federal Rule of Civil Procedure 23(c)(2)(B) requires that class notice:

> [C]oncisely state in plain, easily understood language:

---

[4]Defendant's agreement to Class Counsel's attorney's fees and costs up 30% of the gross settlement fund is limited to the settlement terms originally agreed to by the Parties and not the new and unsupported terms alleged in Plaintiff's Motion for Final Approval.

(i) the nature of the action;
(ii) the definition of the class certified;
(iii) the class claims, issues, or defenses;
(iv) that a class member may enter an appearance through an attorney if the member so desires;
(v) that the court will exclude from the class any member who requests exclusion;
(vi) the time and manner for requesting exclusion; and
(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The Court-approved Notice satisfies each of these requirements.

As to the manner of providing notice, Federal Rule of Civil Procedure 23(c)(2)(B) provides, in pertinent part, that, "[f]or any class certified under Rule 23(b)(3) the Court must direct to class members the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." An individual mailing to each class member's last known address has been held to satisfy the "best notice practicable" test. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (noting that individual mailings satisfy Rule 23(c)(2)). Here, the Settlement Administrator met these requirements.

**C.    The Settlement is Fair, Reasonable, and Adequate**

In determining whether a proposed settlement is fair, reasonable, and adequate, the Court should consider several factors, including: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Waters*, 2012 U.S. Dist. LEXIS 99129, at *33 (citing *In re CP Ships Ltd. Secs. Litig.*, 578 F.3d 1306, 1317–18 (11th Cir. 2009)). "[D]etermining the fairness of a [class action] settlement is a discretionary decision for the trial court, though it should be 'informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the

essence of settlement.'" *United States ex rel. Balko v. Senior Home Care, Inc.*, No. 8:13-CV-3072-T-17TBM, 2017 WL 9398654, at *8 (M.D. Fla. May 2, 2017), *report and recommendation adopted*, No. 813CV03072EAKTBM, 2017 WL 3268200 (M.D. Fla. Aug. 1, 2017). Here, the Court has already preliminarily found these standards to be satisfied.

**1. The Likelihood of Success at Trial Confirms Settlement is Appropriate**

Continuing the FCRA Litigation would have been complicated, protracted, and expensive. The Eleventh Circuit had granted Defendant's Rule 23(f) petition appealing this Court's class certification order. Subsequently, the Court stayed the action pending resolution of Defendant's appeal. Thus, at best, the litigation was going to be protracted.

If Defendant were to have succeeded at the Eleventh Circuit, the prospects of imminent class wide relief were very low. Even if Plaintiff prevailed at the Eleventh Circuit, the risk of being unable to establish liability and damages at trial was also present because of the numerous defenses Defendant intended to assert if the case was not settled. From Plaintiff's perspective, there was a risk of decertification of the class, or that further along in the litigation the Court would accept one or more of Defendant's arguments on a key point and grant summary judgment. Plaintiff's success on any of these aspects in motions practice, let alone at trial, was not guaranteed. Moreover, Plaintiff still faced the uphill battle of proving willfulness at trial even if he survived dispositive motions. There is no certainty that continued litigation would provide a better outcome than the settlement. This factor therefore favors a finding that the Settlement is fair, reasonable, and adequate. *Youngman v. A&B Ins. & Fin., Inc.*, No. 616CV1478ORL41GJK, 2018 WL 1832992, at *7 (M.D. Fla. Mar. 22, 2018), *report and recommendation adopted*, No. 616CV1478ORL41GJK, 2018 WL 1806588 (M.D. Fla. Apr. 17, 2018) (approving settlement where plaintiffs faced similar difficulties of proof at trial).

Courts reviewing the issue of fairness have favored settlements that allow even partial recovery for class members where the results of suits are uncertain. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("Risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty."); *see In re Mexico Money Transfer Litig.*, 267 F.3d 743 (7th Cir. 2001); *Pinsker v. Borders Group, Inc. (In re BGI, Inc.)*, 465 B.R. 365, 379 (Bankr. S.D.N.Y. 2012) (approving class settlement with 17% cap on total liability, on grounds that "Class Members would have received nothing if they were not successful). Therefore, it is reasonable for the Class Members to take the bird in the hand instead of the prospective flock in the bush") (citations omitted); *Kizer*, 2012 U.S. Dist. LEXIS 63795, at *23–24 (approving class settlement awarding approximately 30% of possible recovery); *Smith*, 2007 U.S. Dist. LEXIS 85551, at *15 (approving class settlement where, "Plaintiffs concede that their case against the [] Defendants is not a sure success").

**2. The Recovery in the Settlement is in Line with Similar Class Action Settlements**

As set forth above, Plaintiff and his Class Counsel unambiguously represented to this Court that the settlement terms agreed to by the Parties ($39 gross share per Class Member; $25 net share per class Member) constituted a very good settlement to the Class (agreed to by the Parties and as defined by the Court) (ECF 70).

The Agreement should be approved because the proposed settlement compares favorably to the limited range of damages available under the FCRA that could potentially be recovered at trial. In his Complaint, Plaintiff seeks to recover compensation under 15 U.S.C. § 168 ln(a)(1)(A), (2), and (3) for himself and the other class members consisting of (a) statutory damages of not less than $100 and not more than $1,000; (b) punitive damages, (c) attorney's fees and costs.' However, as Section 1681n(a) of the FCRA indicates, proof of noncompliance with the technical requirements of

the FCRA alone does not impose liability on a defendant. Recovery of damages under Section 1681n(a) is contingent on establishing that the defendant willfully failed to comply with the FCRA; negligent noncompliance is not sufficient. *Safeco v. Burr,* 127 S. Ct. 2201, 2215 (2007); 15 U.S.C. § 1681n(a). And, even if liability for willful noncompliance is established as Plaintiff believes, the determination as to the size of the award is left to the discretion of the jury, which may return an award of no damages as a possible outcome.

The settlement proposed in the Agreement secures a monetary payment to each member of the Class in the approximate amount of $39 *pro rata* gross share of the gross settlement fund of $850,000 (with an agreed-to Class that totaled approximately 22,000). Even if the settlement class established liability against Defendant for willful violations of the pertinent provisions of the FCRA, a real risk exists that the class members could recover less after successfully litigating their claims through trial than the payment negotiated by the parties in the Agreement.

As Class Counsel previously represented to this Court (ECF 70), he believes that the proposed minimum gross payment of approximately $39 to each member of the Class is a very good settlement, providing more relief to Class Members than other recently approved settlements. The district court in *Hinson v. Kelly Services Inc.,* summarized the results of such settlements as follows:

> The results counsel achieved for the class were good. The gross recovery (i.e., recovery before fees and other expenses are taken from the fund) is $30 per class member (on average). This appears to be in line with the average per-class-member gross recovery in other settlements of stand-alone disclosure claims. *See Moore v. Aerotek, Inc.,* No. 2:15-CV-2701, 2017 WL 2838148, at *4 (S.D. Ohio June 30, 2017) (per-capita gross recovery of $25 in case involving a stand-alone disclosure claim and a claim that employer did not provide a copy of consumer report), *report and recommendation adopted,* 2017 WL 3142403 (S.D. Ohio July 25, 2017); *Lagos v. Leland Stanford Junior Univ.,* No. 15-CV-04524-KAW, 2017 WL 1113302, at *2 n.1 (N.D. Cal. Mar. 24, 2017) (per-capita gross recovery of $26); *Lengel v.*

*HomeAdvisor, Inc.,* No. CV 15-2198, 2017 WL 364582, at *9 (D. Kan. Jan. 25, 2017) (citing FCRA disclosure cases with per-capita gross recoveries of $33, $40, and $44).

2017 WL 3446596, at *3 (ED. Mich. Aug. 11, 2017); *See, e.g., Marcum v. Dolgencorp, Inc.;* No. 3:12-cv-00108 (E.D. Va. 2014) ($53 gross payment per class member reduced by attorneys' fees and service awards paid from class settlement fund); *Knights v. Publix Super Markets, Inc.;* No. 3:14-cv-006720 (M.D. Term. 2014) ($48.55 paid to each class member); *Pitt v. Kmart Corp.,* No. 3:11-cv-00697 (E.D. Va. 2013) ($18 or $38 received by class members depending on date of FCRA violation).

The settlement proposed in the Agreement falls within the reasonable range of possible recovery for members of the settlement classes. "A proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Klein v. O'Neal, Inc.,* 705 F. Supp. 2d 632, 649 (ND. Tex. 2010). Balancing the risk that liability cannot be established against Defendants for willful violations of the disclosure and authorization provisions of the FCRA against the range of possible recovery of damages supports settlement. (Joint Motion, pp. 10-11, 12-13 (ECF 70).

Accordingly, based on the Parties' Joint Motion for Preliminary Approval and the Parties' Settlement Agreement (preliminarily approved by this Court), the monetary relief obtained by the Parties' proposed settlement demonstrates that this settlement is a very good result for the class, agreed to by the Parties and as defined by this Court. (ECF 70, 70-1, 71).

### 3. Continued Litigation will be Complex, Expensive and Resource-Consuming

There is an inherent and substantial expense to continued litigation. As detailed above, the action was aggressively litigated from the onset. In fact, settlement was obtained during a Court-imposed stay of the proceedings pending the Eleventh Circuit's resolution of Defendant's Rule 23(f) petition. Put simply, there was no end in sight. In the absence of settlement, the parties

would have continued expending time, money and judicial resources litigating the case.

### 4. There is No Opposition to Any Aspect of the Settlement

As noted above, nearly all Class Members were notified of the Settlement. None objected. None asked to be excluded. The complete absence of opposition to the Settlement favors a finding that it is fair, reasonable, and adequate. *See James v. JPMorgan Chase Bank, N.A.*, No. 8:15-CV-2424-T-23JSS, 2017 WL 2472499, at *1 (M.D. Fla. June 5, 2017) ("The absence of opposition to the settlement militates heavily toward approval.").

### 5. The Settlement was Reached at an Appropriate Stage of Proceedings

This factor focuses on assuring that "the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation." *United States ex rel. Balko*, 2017 WL 9398654, at *12. In this case, Plaintiff has done so. The Parties engaged in extensive discovery exchanging thousands of pages of documents. Class counsel is satisfied the case has been thoroughly investigated and settled at an appropriate state of the proceedings. Thus, the Court should conclude that this factor also favors granting final approval. See *Poertner v. Gillette Co.*, No. 6:12-CV-803-ORL-31DA, 2014 WL 4162771, at *4 (M.D. Fla. Aug. 21, 2014), aff'd, 618 F. App'x 624 (11th Cir. 2015) (finding similar facts weighed in favor of approval of settlement).

## IV. CONCLUSION

The Parties' Settlement, as set forth in the Parties' Joint Motion for Preliminary Approval (ECF 70), the Parties' Settlement Agreement (EFC 70-1), and this Court's Order granting Preliminary Approval of Settlement (ECF 71), is in the best interest of the Class, was reached through arm's-length negotiations through a well-respected mediator, and is fair and reasonable to all concerned.

**WHEREFORE**, Defendant, Area Wide Protective, respectfully request the Court enter a Final Order: (1) approving the Parties' Settlement Agreement pursuant to the agreed-to settlement terms set forth herein; and (2) requiring the Parties to comply with the terms and conditions in the Settlement Agreement or pursuant to the Court's Order granting Final Approval.

Respectfully submitted this 11th day of January, 2019.

*s/ Robin Taylor Symons*
Robin Taylor Symons, Esq.
rsymons@gordonrees.com
Florida Bar No. 356832
Jacqueline M. De Leon, Esq.
jmdeleon@gordonrees.com
Florida Bar No. 115576
GORDON & REES
SCULLY MANSUKHANI
100 SE Second Street, Suite 3900
Miami, Florida 33131
Telephone: (305) 428-5300
*Counsel for Defendant*
*Area Wide Protective, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 11, 2019, the foregoing document was filed with the Clerk of Court by using the CM/ECF system, that will serve a true and correct copy by electronic notice on all counsel or parties of record listed on the Service List below.

*s/ Robin Taylor Symons*
Robin Taylor Symons, Esq.

**Service List**
Marc R. Edelman, Esq.
medelman@forthepeople.com
MORGAN & MORGAN, P.A.
201 N. Franklin Street #700
Tampa, FL 33602
*Counsel for Plaintiffs*